IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MALENA MEADOWS, et al.,

           Plaintiffs,

v.                                       CIVIL ACTION NO. 2:19-cv-00525

AMMAR KRAYEM, et al.,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiffs Malena Meadows, Jessica Abshire, Leslie Smith, and Heather Adkins' (collectively "Plaintiffs") Motion for Summary Judgment. (ECF No. 80.) For the reasons discussed more fully below, the Court **DENIES** Plaintiffs' motion in its entirety.

        I.         BACKGROUND

Plaintiffs are past employees of Defendant AM & GH LLC ("AM & GH"), an entity which owned and operated a restaurant named Grano located in Kanawha County, West Virginia. (ECF No. 70 at 2, ¶¶ 3–7.) This case is the second lawsuit filed by these Plaintiffs against AM & GH. On September 22, 2015, these Plaintiffs filed a separate and identical lawsuit against their former employer, where they alleged that AM & GH did not pay them minimum wage or overtime wages as required by the Fair Labor Standards Act ("FLSA") and West Virginia state law (hereafter "the First Lawsuit"). *See Meadows v. AM & GH*, No. 2:15-cv-13370 (S.D. W. Va. Sept. 22, 2015). AM & GH refused to obtain counsel in violation of this Court's orders and default judgment was

1

entered in favor of Plaintiffs. Memorandum Opinion and Order, *Meadows v. AM & GH*, No. 2:15-cv-13370 (S.D. W. Va. Sept. 22, 2015), ECF No. 38 at 2. Further, in a Memorandum Opinion and Order entered on August 15, 2018, this Court ordered monetary damages against AM & GH. *Id.* at 15.

Plaintiffs filed this second lawsuit because Ammar Krayem, the sole member and owner of AM & GH, sold all of the assets of AM & GH in what Plaintiffs classify as an attempt to escape judgment in the First Lawsuit. (ECF No. 70 at 4, ¶ 19.) On August 2, 2018, Ammar Krayem entered into an agreement with Sana Said Suliman ("Suliman") where Ammar Krayem agreed to sell Grano and all its assets in exchange for two residential properties owned by Suliman which were valued at over $140,000.00. (*Id.* at 10.) On August 14, 2018, these defendants executed a document memorializing this agreement. (*Id.* at 14.) Ammar Krayem and Suliman executed this agreement only one day before this Court entered its Memorandum Opinion and Order ordering monetary damages against AM & GH in the First Lawsuit. (*See* Memorandum Opinion and Order, *Meadows v. AM & GH*, No. 2:15-cv-13370 (S.D. W. Va. Sept. 22, 2015), ECF No. 38 at 2.)

Further, on August 20, 2018, Suliman and her son Adham Kalou ("Kalou") formed KAL PRO LLC ("KAL PRO") in order to place the assets from this sale. (*Id.* at 5, ¶ 23.) Plaintiffs further allege that Ammar Krayem placed the two residential properties he received in exchange in his own newly formed entity named K STAR LLC ("K STAR"). (*Id.* ¶ 24.) On August 31, 2018, KAL PRO and AM & GH executed a bill of sale which finalized the transfer of assets. (*Id.* at 21–23.) Finally, on August 1, 2019, K STAR deeded one of the residential properties to Defendant Nadin Krayem, the daughter of Ammar Krayem, and Nahaeda Sharbarek

2

("Sharbarek"), the wife of Ammar Krayem. (*Id.* at 47.) Plaintiffs also allege that the second residential property was sold to parties not involved in this lawsuit on June 6, 2019. (ECF No. 80–2.)

Nadin Krayem and Sharbarek have never substantially participated in this action, and Plaintiffs never moved for default against these parties. Further, on August 15, 2019, the Court directed the Clerk of the Court to enter default judgment against Ammar Krayem for his failure to defend this action in a timely manner. (ECF No. 19.) The Clerk entered default against Ammar Krayem the same day. (ECF No. 22.) However, this Court denied default judgment against Ammar Krayem on November 10, 2019, because he filed a document that this Court construed as an answer. (*See* ECF Nos. 40, 47.) Finally, on August 4, 2020, this Court entered default judgment against AM & GH and K STAR because both parties failed to respond to this lawsuit. (ECF Nos. 64, 64.)

On November 19, 2020, Plaintiffs filed their Motion for Summary Judgment. (ECF No. 80.) Defendants responded, (ECF No. 82), and Plaintiffs timely replied, (ECF No. 83). As such, this motion is fully briefed and ripe for adjudication.

## II. LEGAL STANDARDS

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. This rule provides, in relevant part, that summary judgment should be granted if "there is no genuine issue as to any material fact." Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return

3

a verdict for the nonmoving party." *News & Observer Publ. Co. v. Raleigh–Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). When evaluating such factual issues, the Court must view the evidence "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If a party fails to make a sufficient showing on one element of that party's case, the failure of proof "necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

### III.  DISCUSSION

Plaintiffs' Amended Complaint alleges the following claims: Count I for violations of the Fair Labor Standards Act against all Defendants; Count II for fraudulent transfer against all Defendants; Count III for successor liability against KAL PRO and AM & GH; and Count IV for injunctive relief against all Defendants. (*See* ECF No. 70.) Further, Defendants KAL PRO,

Kalou, and Suliman have alleged the following cross claims: Count I for breach of agreement against Ammar Krayem, K STAR, and AM & GH and Count II for fraud against Ammar Krayem, K STAR, and AM & GH. (*See* ECF No. 15.) Plaintiffs move for summary judgment on Count II against Ammar Krayem, Kalou, Suliman, Nadin Krayem, and Shabarek and Count III against KAL PRO and Suliman.

### A. Count II for Violations of the West Virginia Fraudulent Transfers Act

Plaintiffs seek summary judgment against Ammar Krayem, Kalou, Suliman, Nadin Krayem, and Shabarek on their Count II claim for fraudulent transfer.[1] Under West Virginia's Fraudulent Transfers Act, a "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." W. Va. Code § 40-1A-1. The Act provides that:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) With actual intent to hinder, delay or defraud any creditor of the debtor; or

---

[1] First, no party addresses whether these parties fit within the definition of "debtor", as defined under West Virginia's Fraudulent Transfers Act. A "debtor" is defined as "a person who is liable on a claim." W. Va. Code § 40–1A–1(f). The monetary damages awarded in the First Lawsuit were ordered against AM & GH only. Memorandum Opinion and Order, *Meadows v. AM & GH*, No. 2:15-cv-13370 (S.D. W. Va. Sept. 22, 2015), ECF No. 38 at 15. Thus, AM & GH is the only party who was liable to Plaintiffs for their first default judgment award, which is the debt that Plaintiffs allege AM & GH sought to avoid by selling its assets.

The Act specifically states that "[a] transfer made or obligation incurred by a *debtor* is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the *debtor* made the transfer or incurred the obligation" for the reason articulated therein. W. Va. Code § 40–1A–4(a)(1–2). The fact remains that the only party subject the default order entered in the First Lawsuit was AM & GH, and not Ammar Krayem, Kalou, Suliman, Nadin Krayem, and Shabarek. Thus, based on the record, it appears that these parties were never liable to Plaintiffs for any debts when AM & GH's assets were transferred and are still not liable to Plaintiffs for any debts. However, because the parties did not raise this issue themselves, the Court is without sufficient evidence to determine if Ammar Krayem, Kalou, Suliman, Nadin Krayem, and Shabarek actually fit within the definition of a "debtor." Further, even if these parties do fit within the definition of a "debtor" and could be held liable under this Act, Plaintiffs' motion would still fail under summary judgment standards due to their failure to produce evidence in support of their claims.

>> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor:
>> >> (i) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
>> >> (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

W. Va. Code § 40–1A–4(a)(1–2). Next, the Act identifies the following non–exhaustive list of factors that should be used to determine "actual intent" under Section 40–1A–4(a)(1):

> (1) The transfer or obligation was to an insider;
> (2) The debtor retained possession or control of the property transferred after the transfer;
> (3) The transfer or obligation was disclosed or concealed;
> (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (5) The transfer was of substantially all the debtor's assets;
> (6) The debtor absconded;
> (7) The debtor removed or concealed assets;
> (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*Id.* § 40–1A–4(b)(1–11). Finally, the Act requires the creditor to prove the elements of their claim by a preponderance of the evidence. *Id.* § 40–1A–4(c).[2]

---

[2] In addition, the parties have again failed to brief the issue of whether this subject transfer is exempt under the Act. The Act does not apply to conveyed property if it is not determined to be an "asset". *Rich v. Rich*, 405 S.E.2d 858, 861 (1991). An asset is defined as:

> "Asset" means property of a debtor, but the term does not include:
> (1) Property to the extent it is encumbered by a valid lien;
> (2) Property to the extent it is generally exempt under nonbankruptcy law; or
> (3) An interest in property held in tenancy by the entireties to the extent it is not subject to process by a creditor holding a claim against only one tenant.

Here, Plaintiffs have produced no evidence to support a finding of summary judgment in their favor with regard to any of these five defendants. First, Nadin Krayem and Shabarek did not file a response to this motion and have never substantially participated in this action. Plaintiffs only allegation in relation to Nadin Krayem and Shabarek is that they were deeded one of the residential properties sold to Ammar Krayem one year after this transaction occurred. This single allegation is insufficient to support judgment in Plaintiffs' favor on their fraudulent transfer claim. Plaintiffs' argument is based on the assumption that Ammar Krayem transferred this property to his wife and daughter without payment, but Plaintiffs offer absolutely no evidence to support this assumption. While Nadin Krayem and Shabarek are insiders of AM & GH, as defined under the Act, simply being conveyed property cannot be used as evidence of actual intent to defraud a creditor, as required to establish a claim. *See* W. Va. Code § 40-1A-1(2)(vi) (defining an insider of a corporation as a "relative of a general partner in, a general partner of, or a person in control of the debtor"). Plaintiffs have provided no other information about these parties and such little information cannot support a finding on their favor.

Next, Plaintiffs' argument against Ammar Krayem is based only on unsupported, conclusory statements about Ammar Krayem's intent in making the sale. Plaintiffs rely solely on the fact that a sale agreement was made within one day of the default judgment order entered by this Court in the First Lawsuit. Plaintiffs have produced no depositions, interrogatories, or other documents submitted after a request for production. As the movant, Plaintiffs bear the burden of

---

W. Va. Code § 40–1A–1(l). The parties have not briefed these issues and do not provide this Court with the necessary information to determine if AM & GH's property was encumbered by a valid lien. This Court requires more evidence regarding the equity of Grano in order to determine if there is any equity in this property that would allow it to be classified as an "asset." If Grano did not meet the definition of an "asset," Plaintiffs' claims would fail. However, assuming this property did meet the definition of an "asset," Plaintiffs' motion would still fail under summary judgment standards because they have failed to provide evidence in support of their claims.

7

showing there is an absence of any genuine issue of material fact and that they are entitled to judgment as a matter of law. *Barwick*, 736 F.2d at 957–59 ("A mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely."). Plaintiffs have produced no evidence to show Ammar Krayem's intent, no evidence to show that AM & GH did not receive items in equivalent value in exchange, and no evidence to show that Ammar Krayem and AM & GH engaged in a transaction in which the remaining assets were small in comparison to what was sold. While Plaintiffs continually claim that Grano was the only asset of AM & GH, there is no evidence on the record to support that claim. Again, Plaintiffs have failed to produce evidence to meet their burden.

Finally, Plaintiffs have produced no evidence to support a finding in their favor with regard to Suliman or Kalou. In what appears to be an attempt to hold Suliman and Kalou liable under Section 40–1A–4(a)(2) of the Act, Plaintiffs argue that Suliman and Kalou failed to pay money or transfer any items of value to AM & GH in exchange for their purchase of the restaurant Grano. (ECF No. 83 at 2.) However, Plaintiffs themselves provided the bill of sale which shows that Suliman and Kalou exchanged two residential properties valued at over $140,000.00 for the restaurant. (*See* ECF No. 70 at 21.) Further, AM & GH is an entity owned by Ammar Krayem, not Suliman and Kalou. Plaintiffs have produced no evidence to show that Suliman and Kalou had control over how Ammar Krayem structured the ownership of the residential properties he received in the sale. Plaintiffs themselves made the allegation that AM & GH was an entity owned solely by Ammar Krayem, but now seek to hold Suliman and Kalou liable, as the sellers, for the actions of Ammar Krayem, as the buyer. Thus, Plaintiffs' argument is without merit.

Further, the remainder of Plaintiffs' motion is based entirely on a self-serving and blatantly false interpretation of a portion of the deposition of Kalou. Plaintiffs argue that Kalou "admitted that he was aware of the debt owed by AM & GH." (ECF No. 81 at 9.) However, Kalou clearly states that he was aware of the lawsuit but was assured by Ammar Krayem that the issue had been settled and resolved. (ECF No. 70 at 33–34.) Plaintiffs' argument is a clear misinterpretation of the plain language of this transcript, and Plaintiffs have produced no other evidence to support the allegation that Kalou or Suliman had knowledge of AM & GH's obligations or this Court's findings in the First Lawsuit. Accordingly, summary judgment is **DENIED** for Plaintiffs on their Count II claim for fraudulent transfer.

### B. Count III for Successor Liability

Plaintiffs seek summary judgment against KAL PRO and Suliman on their Count III claim for successor liability. "In West Virginia, successor liability is analyzed under the law of the transferee corporation's state of incorporation." *Carter Enterprises, Inc. v. Ashland Specialty Co.*, 257 B.R. 797, 802 (S.D. W. Va. 2001) (citations omitted); *see also Sec. Alarm Fin. Enterprises, Inc. v. Parmer*, No. 1:12CV88, 2014 WL 1478840, at *10 (N.D. W. Va. Apr. 14, 2014). At common law, "the purchaser of all the assets of a corporation was not liable for the debts or liabilities of the corporation purchased." Syl. Pt. 3, *Davis v. Celotex Corp.*, 420 S.E.2d 557, 562 (W. Va. 1992). However, "[t]his rule has since been tempered by a number of exceptions and statutory provisions." *Id.* Under West Virginia law,

> [a] successor corporation can be liable for the debts and obligations of a predecessor corporation if there was an express or implied assumption of liability, if the transaction was fraudulent, or if some element of the transaction was not made in good faith. Successor liability will also attach in a consolidation or merger . . . . Finally, such liability will also result where the successor corporation is a mere continuation or reincarnation of its predecessor.

9

Syl. Pt. 3, *Davis v. Celotex Corp.*, 420 S.E.2d 557, 558 (W. Va. 1992). "Successor liability . . . involves an examination of the relationship between an entity that existed for one period of time and an (allegedly different) entity that existed for a subsequent period of time." *Carter Enterprises, Inc. v. Ashland Specialty Co.*, 257 B.R. 797, 801 (S.D. W. Va. 2001). Further, and important here, "successor liability does not speak to an existing relationship between the corporation and its current owner, but to the relationship between the corporation and its predecessor . . . ." *Id.*

Before this Court can begin its analysis, it must first determine if Plaintiffs' Amended Complaint actually alleges this claim against both of these Defendants. This argument is, again, not raised by the parties. However, based upon a plain reading of Plaintiffs' Amended Complaint, Plaintiffs did not allege this claim against Suliman and Kalou.[3] (ECF No. 70 at 8, ¶¶ 45–46.) The only allegation Plaintiffs make under this section states "[t]he defendant, KAL PRO LLC is a successor company of the defendant, AM & GH LLC and as such is liable for the judgment due and owing to the plaintiffs." (*Id.* ¶ 46.) Under each of the other counts, Plaintiffs use such language as "all of the defendants" and "the defendants," but fail to use such inclusive language here. (*Id.* at 7–8, ¶¶ 39, 44.) Accordingly, Plaintiffs have only alleged their successor liability claim against KAL PRO. Thus, to the extent that Plaintiffs attempt to seek summary judgment against Suliman or Kalou, Plaintiffs' summary judgment motion is **DENIED**.

Further, Plaintiffs have again failed to provide any evidence in support of their claim against KAL PRO. Under the Bill of Sale and Assignment, both KAL PRO and AM & GH agreed

---

[3] While Plaintiffs' heading in their memorandum in support of their motion states they seek judgment against KAL PRO and Suliman, they discuss Kalou's actions throughout their analysis. Regardless, Plaintiffs' Amended Complaint does not allege this claim against these parties.

10

that "the Seller does, for itself, its successors and assigns, hereby covenant with the Purchaser that it is the lawful owner of the property and assets hereby transferred, conveyed and assigned; that they are free from all claims, liens and encumbrances except as provided in EXHIBIT acknowledged received by purchaser. . . ." (ECF No. 70 at 22–23.) However, Plaintiffs argue that "[t]he sale documents do not exclude any debt owed by AM & GH LLC dba GRANO and in fact only rely upon the representation of A. Krayem that he transferred the business free of all claims or liens." (ECF No. 81 at 11.) Plaintiffs, again, misinterpret to the Court the plain language of their own exhibits. The Bill of Sale specifically states that the purchase was made "*free* from all claims, liens and encumbrances except as provided in EXHIBIT . . . ." (ECF No. 70 at 23 (emphasis added).) Further, the exhibit referenced here was never provided by the parties, and Plaintiffs acknowledge this fact. (ECF No. 81 at 11.) Thus, there is not enough evidence on the record to allow this Court to conclude that KAL PRO agreed to assume AM & GH's debts.

Next, Plaintiffs' only evidence in support of their argument that this transaction was fraudulent or not made in good faith is their own conclusory statements. Plaintiffs appear to rely on the fact that KAL PRO made the agreement to exchange assets within days of this Court's prior order in the First Lawsuit. However, this single allegation without any proof of intent is insufficient to establish a claim.

Finally, Plaintiffs attempt to argue that KAL PRO must be liable under the final exception stated in Syllabus Point 3 of *Davis v. Celotex Corporation* which establishes liability when the successor corporation is a mere reincarnation of its predecessor. A successor corporation is a mere continuation of a previous corporation if both companies share the same directors and

stockholders and there is only one corporation after the transfer is completed. *Jordan v. Ravenswood Aluminum Corp.*, 455 S.E.2d 561, 564 (W. Va. 1995).

Here, Plaintiffs distort this standard. Based on a reading of their argument, it appears Plaintiffs advocate that KAL PRO should be considered a successor corporation simply because it is a corporation that purchased a business that it continued to operate after the purchase. The fact that KAL PRO sought to use the same recipes and purchased the furniture, machinery, and books and records of Grano is completely irrelevant. Under West Virginia law, a corporation must share the same directors and shareholders and be essentially the same corporation after the asset transfer. Plaintiffs have provided no evidence to show that KAL PRO and AM & GH shared a common identity of directors and shareholders. Accordingly, summary judgment is **DENIED** for Plaintiffs on their Count III claim for successor liability.

### C. Federal Rule of Civil Procedure 56(f)

Although Rule 56 of the Federal Rules of Civil Procedures governs summary judgment motions made by the parties, it also explicitly allows a district court to enter summary judgment *sua sponte*. Specifically, the rule provides that the Court must give "notice and a reasonable time to respond" before it may grant summary judgment for a nonmovant. Fed. R. Civ. P. 56(f). Further, the Fourth Circuit has held that

> the district court's power to grant summary judgment *sua sponte* is contingent on giving the losing party notice that it must come forward and defend its claim. While this notice need not necessarily be a formal document, it should provide the full ten days called for by Fed. R. Civ. P. 56(c). The notice must be sufficient to provide the losing party with an adequate opportunity to demonstrate a genuine issue of material fact. And it must, in view of the procedural, legal, and factual complexities of the case, allow the party a reasonable opportunity to present all material pertinent to the claims under consideration.

*Amzura Enterprises, Inc. v. Ratcher*, 18 F. App'x 95, 103–04 (4th Cir. 2001) (citing *United States Dev. Corp. v. Peoples Fed. Sav. & Loan Ass'n*, 873 F.2d 731, 735 (4th Cir. 1989)).

After an examination of the record and the current posture of this case, the Court finds that there is no genuine dispute of any material fact with relation to Plaintiffs' Count II and Count III claims. As discussed above, Plaintiffs have failed to produce a shred of evidence in support of their claims and rely solely on misleading and conclusory statements to advance their motion. Accordingly, Plaintiffs are hereby put on **NOTICE** that the Court intends to enter summary judgment on Plaintiffs' Count II claim for fraudulent transfer for Defendants Ammar Krayem, KAL PRO, Suliman, Kalou, Nadin Krayem, and Shabarek and on Plaintiff's Count III claim for successor liability for Defendant KAL PRO in accordance with this Memorandum Opinion and Order on **Monday, May 24, 2021**. Plaintiffs may file papers in response or objections in the interim.

Further, if this Court enters summary judgment for Defendants on these claims, the Court will then dismiss Defendants KAL PRO, Kalou, and Suliman's cross claim for breach of agreement against Ammar Krayem, K STAR, and AM & GH and cross claim for fraud against Ammar Krayem, K STAR, and AM & GH. (*See* ECF No. 15.)

### IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiffs' Motion for Summary Judgment, (ECF No. 80.)

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 13, 2021

_____
THOMAS E. JOHNSTON, CHIEF JUDGE